**Patrick J. Geile**
**Bar No. 6975**
**FOLEY FREEMAN, PLLC**
**953 S. Industry Way**
**P.O. Box 10**
**Meridian, ID 83680**
**Phone: (208) 888-9111**
**FAX: (208) 888-5130**
*pgeile@foleyfreeman.com*

**Attorney for Creditor, Spring Creek Capital, LLC**

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>**RYAN WILLIAM HAWKES and SUZANN MARGARET HAWKES,**<br><br>Debtors. | Case No. 19-00880-JDP<br><br>Chapter 7 |
| **SPRING CREEK CAPITAL, LLC,**<br><br>Plaintiff,<br><br>vs.<br><br>**RYAN WILLIAM HAWKES,**<br><br>Defendant. | Adv. Case No. 19-06057-JDP |

### FIRST AMENDED ADVERSARY COMPLAINT

COMES NOW, the Plaintiff, Spring Creek Capital, LLC, by and through its attorney of record, Patrick J. Geile of Foley Freeman, PLLC, and for a cause of action against Defendant, Ryan William Hawkes, complains and alleges as follows:

### **JURISDICTION**

1. That the Court has jurisdiction over this matter pursuant to 28 U.S.C § 1334, this

**FIRST AMENDED ADVERSARY COMPLAINT - 1**

is a core proceeding as defined in 28 U.S.C. § 157, and this is an adversary proceeding, within the meaning of Rule 7001 of the Federal Rules of Bankruptcy Procedure, seeking to determine the dischargability of a debt.

2.  That on or about July 31, 2019, Ryan William Hawkes and Suzann Margaret Hawkes ("Debtors") filed a Chapter 7, Title 11 U.S.C. proceeding with the Court, said proceeding being identified in the Court files as Case No. 19-00880-JDP.

3.  That Plaintiff, Spring Creek Capital, LLC is, and at all times pertinent hereto was, a company organized and doing business in the state of Idaho.

4.  That Plaintiff, Spring Creek Capital, LLC is a Creditor of Debtor.

5.  That the Debtor/Defendant is, and at all times pertinent hereto was, an individual residing and doing business in the state of Idaho.

6.  That the Plaintiff consents to the Bankruptcy Court entering final facts and conclusions of law.

## GENERAL ALLEGATIONS

7.  Doug Clegg is the owner and operator of Plaintiff Spring Creek Capital, LLC.

8.  Clegg and Defendant had a close relationship before these proceedings and often spent time together.

9.  On or about January 12, 2012, Spring Creek Capital, LLC loaned to C.A.R.S. Enterprises $300,000.00 at a rate of 15% per year. The terms of agreement are set forth in the Promissory Note attached hereto as **Exhibit A.**

10. That Debtor Ryan William Hawkes guaranteed that obligation. Attached hereto as **Exhibit B** is a true and correct copy of that guarantee.

11. C.A.R.S. is in default under the terms of the agreement and has failed to make payment.

**FIRST AMENDED ADVERSARY COMPLAINT - 2**

12. Debtor has failed to pay Spring Creek pursuant to the terms of the Guarantee.

13. Spring Creek has an outstanding balance of $300,000.00 plus interest.

14. Because of the relationship between Clegg and Defendant, Clegg decided to forego severe recourse to secure repayment and instead gave Defendant more time to pay back his debt.

15. Debtor made several assertions regarding C.A.R.S. output including high numbers of cars sold in any given month, that things were going well, that C.A.R.S. was very profitable.

16. These assertions were false; C.A.R.S. was in fact in poor financial health and the Debtor took out millions of dollars of loans, guaranteeing many of them.

17. The Debtor has not provided any accounting of income and expenses.

18. The Debtor lists $1,233,140.13 in assets and $7,629,581.70 in liabilities.

19. The Debtor also directed C.A.R.S. to transfer to a non-creditor DA Capital LLC, real property the day after the bankruptcy filing August 1, 2019 valued at $600,000.00.

20. Neither C.A.R.S. nor debtor received any consideration for this transfer.

## COUNT 1

## FRAUDULENT MISREPRESENTATION AND OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

21. Plaintiff incorporates and realleges by this reference all allegations contained in Paragraphs 1 through 20 of the complaint.

22. Defendant specifically told Plaintiff that he would be continuing to make the payments on the debt owed to Plaintiff.

23. Defendant assured Plaintiff numerous times that cash flow was good.

24. Defendant told Plaintiff on several occasions that Defendant's vehicle retail business had a "60-car month" or "80-car month" and that the sales would be sufficient to make

**FIRST AMENDED ADVERSARY COMPLAINT - 3**

payments to Plaintiff.

25. That said statements were false because Defendant had made representations that many vehicles had been sold when, in fact, the vehicles were still on the car lot of C.A.R.S..

26. That said statements were false because money received as payments for sold cars was not used to pay debt owed to Plaintiff.

27. The false statements made by Defendant were intended to prevent or delay Plaintiff from seeking other recourse to receive payments on his debt.

28. Defendant established a pattern of continuously misleading Plaintiff to delay Plaintiff's collection of the debt.

29. That Plaintiff relied on those statements by foregoing other options for recovery and facing the possibility of nonpayment through discharge.

30. Plaintiff was damaged by these misrepresentations pursuant to *Carroll v. Jadallah*, 752 F. App'x 497 (9th Cir. 2019).

## COUNT 2

### GENERAL DISCHARGE PURSUANT TO § 727 (a)(2)(A) and (B)

31. Plaintiff incorporates and realleges by this reference all allegations contained in Paragraphs 1 through 28 of the complaint.

32. That Defendant, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, or concealed, or has permitted to be transferred, removed, or concealed property of the debtor within one year before the date of the filing of the petition.

33. Defendant transferred inventory of his business or the proceeds thereof within a year of filing the petition.

34. The payments received by Defendant in exchange for inventory have been

**FIRST AMENDED ADVERSARY COMPLAINT - 4**

concealed and not presented to the Court or Plaintiff within a year of filing the Chapter 7 petition.

35. That Debtor caused C.A.R.S. to transfer real property located at 2615 Cleveland Blvd, Nampa, Idaho, valued at $600,000.00 and subject to secured interests, after the date of the bankruptcy filing to a non-creditor entity without consideration and with the intent to hinder and delay creditors.

36. Debtor failed to list the aforementioned real property located at 2615 Cleveland Blvd. Nampa in its schedules and described C.A.R.S. as having "No assets" on schedule B line 19.

## COUNT 3

### GENERAL DISCHARGE PURSUANT TO § 727 (a)(3) U.S.C, TITLE 11

37. Plaintiff incorporates and realleges by this reference all allegations contained in Paragraphs 1 through 34 of the complaint.

38. That Defendant has failed to keep adequate business records to ascertain Debtor's financial condition on the date of the bankruptcy filing.

39. Defendant borrowed funds from Plaintiff as well as a variety of other lenders over the course of several years.

40. Defendant failed to keep records demonstrating the use and expenditure of the borrowed funds.

41. Plaintiff asked on numerous occasions for reports as to the status of Defendant's business and the status of Plaintiff's Note, but Defendant never complied with these requests.

## COUNT 4

### GENERAL DISCHARGE PURSUANT TO § 727 (a)(4) U.S.C, TITLE 11

42. Plaintiff incorporates and realleges by this reference all allegations contained in

**FIRST AMENDED ADVERSARY COMPLAINT - 5**

Paragraphs 1 through 39 of the complaint.

43. Debtor knowingly and fraudulently, in connection with the case, made a false oath.

44. Debtor knowingly failed to describe C.A.R.S. and its value by failing to disclosed the real property commonly known as 2615 Cleveland Blvd, Nampa, Idaho.

## COUNT 5

## REQUEST FOR ATTORNEYS FEES AND COSTS

45. That the Promissory Note and note specifically provide for attorney's fees and costs "Attorney's Fees". "Borrower agrees to pay all costs include reasonable attorney's fees and expenses incurred by holder in enforcing payment or collection of this Note, whether or not a suit is filed."

46. Plaintiffs were required to retain the services of Foley Freeman, PLLC, to prosecute this matter and, therefore, request attorney's fees and costs pursuant to Idaho Code 12-120, Idaho Rule of Civil Procedure 54 and Federal Bankruptcy Rule 7054.

WHEREFORE PLAINTIFFS PRAY AND REQUESTS THE FOLLOWING RELIEF:

1) That Debtor is denied a discharge pursuant to 11 U.S.C. 727.

2) The debt in the amount of $300,000.00 be determined non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2).

3) Plaintiff be awarded its reasonable attorney's fees and

4) For any other relief the court deems appropriate.


DATED this 3rd day of January, 2020.

/s/ Patrick J. Geile
Patrick J. Geile
Attorney for Plaintiff

**FIRST AMENDED ADVERSARY COMPLAINT - 6**

# PROMISSORY NOTE

$300,000.00

January 12, 2012
Boise, Idaho

FOR VALUE RECEIVED, C.A.R.S. ENTERPRISES, INC., doing business as HAWKES MOTORS ("Borrower"), promises to pay to the order of SPRING CREEK CAPITAL LLC ("Holder") the principal amount of this Note together with interest at the rate stated hereunder.

1. **Principal Amount.** The principal amount of this Note shall be Three Hundred Thousand and No/100 U.S. Dollars ($300,000.00).

2. **Interest Rate.** The rate at which interest shall accrue on the principal amount under this Note is Fifteen percent (15.0%) per annum.

3. **Interest Payments.** Interest shall be due and payable in monthly installments, commencing with the first payment on February 12, 2012, and continuing monthly thereafter until the entire unpaid principal balance, together with interest thereon, shall be paid in full. The initial interest payment shall be Three Thousand Seven Hundred Fifty and No/100 U.S. Dollars ($3,750.00) and shall adjust accordingly when principal payments are made on this Note. If no principal payments are made on this Note during the loan term, each monthly interest payment amount shall be Three Thousand Seven Hundred Fifty and No/100 U.S. Dollars ($3,750.00).

4. **Principal Payment.** The entire unpaid principal balance, together with interest thereon, shall be due and payable on January 12, 2015; provided, however, Holder may demand payment of the entire unpaid principal balance, together with interest thereon, at any earlier time upon ninety (90) days written notice to Borrower.

5. **Accrual of Interest.** If any monthly installment of interest due and payable under this Note is not paid within fifteen (15) days after it becomes due, such amount shall be added to principal and continue to accrue interest at the rate stated above.

6. **Treatment of Payments.** Payments from Borrower to Lender under this Note shall be applied first to any late charges, second to accrued and unpaid interest and third to principal.

7. **Events of Default.** The occurrence of any one or more of the following shall constitute an "Event of Default" under this Note:

(a) Failure by Borrower to pay any amount due under this Note within thirty (30) days of the date due;

(b) Failure by Borrower to perform or observe any other covenant or agreement contained in this Note;

(c) Determination that any representation or warranty made by Borrower in this Note is false or misleading in any material respect as of the date when made; or

**EXHIBIT A**

PROMISSORY NOTE – P. 1

Case 19-06057-JDP Doc 11-1 Filed 01/03/20 Entered 01/03/20 16:18:21 Desc Main
Document Page 8 of 16
Case 19-06057-JDP Doc 1-1 Filed 10/22/19 Entered 10/22/19 16:43:14 Desc
Adversary Complaint Page 8 of 16

(d) Borrower is (i) the subject of an order for relief by the bankruptcy court or is unable or admits in writing its inability to pay its debts as they mature or makes an assignment for the benefit of creditors; or (ii) any judgment, writ, warrant of attachment or execution or similar process is issued or levied against all or any part of the property of Borrower and is not released, vacated or fully bonded within thirty (30) calendar days after its issue or levy.

8. Remedies. If an Event of Default has occurred, Holder may, upon thirty (30) days written notice to Borrower, (a) declare the entire unpaid principal balance, all accrued and unpaid interest, and any unpaid late charges on this Note immediately due and payable, and (b) exercise any and all remedies provided under applicable law.

9. Prepayment. Borrower shall have the right to voluntarily prepay all or any portion of the principal balance, together with accrued interest thereon, at any time without prepayment fee or other penalty.

10. Timeliness of Payment. A payment is timely made if it is actually received by Holder on or before the date on which it is due, or if it is mailed using the U.S. Postal Service and is postmarked at least one day prior to the date on which it is due. If the date a payment is due falls on a Saturday, Sunday, or a day that is a legal holiday under the laws of the United States, that monthly payment shall be due on the next succeeding business day.

11. Pledge Agreement and Guaranties. The obligations of Borrower hereunder are secured by the following: (a) that certain Pledge Agreement of even date herewith made by Borrower, under which Borrower grants Holder a security interest in the inventory and title of the vehicles purchased by Borrower using the funds advanced Borrower by Holder (the "Pledge Agreement"); and (b) those certain Guaranties of even date herewith made by RYAN HAWKES and SUZANN HAWKES (collectively, "Hawkes"); and CURTIS GRIEVE and ANDREA GRIEVE (collectively, "Grieve"), the owners of Borrower (each a "Guarantor"), under which each Guarantor irrevocably and unconditionally promises to pay Holder, upon demand, any and all obligations of Borrower under this Note upon an Event of Default as defined in Paragraph 7 of this Note.

12. Use of Funds. Notwithstanding any provision herein to the contrary, the Pledge Agreement, or the respective Guaranties entered into by Hawkes and Grieve, Borrower shall only use the funds loaned by Holder under this Note for the purpose of a "Wholesale Operating Line." For purposes of this Note, Wholesale Operating Line shall be defined as the acquisition of inventory in the form of automobiles and automobile titles by Borrower for the purpose of selling such inventory through means including, but not limited to, selling such inventory on its lot located in Boise, Idaho, selling such inventory via the world wide web, and selling such inventory through various auto auctions and other wholesale methods. In addition, Borrower may use the funds loaned by Holder for any other purpose as approved with the express written consent of Holder.

13. Reporting. Borrower shall report to Holder on a quarterly basis with respect to the use of the funds. Such report shall include a list of the inventory acquired by Borrower using the funds advanced by Holder under this Note. In addition, Holder shall have the right on a quarterly basis to visit Borrower's place of business in Boise, Idaho to inspect and examine the

inventory purchased by Borrower using the funds advanced by Holder under this Note. Holder shall give Borrower notice at least five (5) business days prior to Holder's inspection. The right of Holder to inspect the inventory of Borrower acquired using the funds advanced to Borrower under this Note shall be personal to the member of Holder, Douglas B. Clegg, and no other individual shall have such right without the express written consent of Borrower.

14. Personal Recourse. Borrower accepts and agrees that this Note is a full recourse Note and that Holder may exercise any and all remedies available to it under law to secure and satisfy payment of the Note upon an Event of Default.

15. Holder's Rights; No Waiver by Holder. The rights, powers and remedies of Holder under this Note shall be in addition to all rights, powers and remedies available to Holder by virtue of any statute or rule of law. All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently in Holder's sole discretion without impairing Holder's rights or available remedies. Any forbearance, failure or delay by Holder in exercising any right, power or remedy shall not preclude further exercise thereof, and every right, power or remedy of Holder shall continue in full force and effect until such right, power or remedy is specifically waived in a writing executed by Holder.

16. Borrower's Waivers. Borrower and any endorsers of this Note, and each of them, hereby waive diligence, demand, presentment for payment, notice of non-payment, protest and notice of protest, and specifically consent to and waive notice of any renewals or extensions of this Note, whether made to or in favor of Borrower or any other person or persons. Borrower and any endorsers of this Note expressly waive all right to the benefit of any statute of limitations and any moratorium, reinstatement, marshaling, forbearance, extension, redemption or appraisement now or hereafter provided by the Constitution and the laws of the United States of America and of any state thereof, as a defense to any demand against Borrower or any such endorsers, to the fullest extent permitted by law.

17. Transfers by Holder. This Note or any interest in this Note may be hypothecated, transferred or assigned by Holder without the prior consent of Borrower.

18. Amendment. This Note may be amended or modified only by an instrument in writing which by its express terms refers to this Note and which is duly executed by the party sought to be bound thereby.

19. Successors and Assigns. This Note shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and permitted assigns.

20. Governing Law. This Note shall be governed by and construed in accordance with the laws of the State of Idaho.

21. Attorneys' Fees. Borrower agrees to pay all costs, including reasonable attorneys' fees and expenses, incurred by Holder in enforcing payment or collection of this Note, whether or not suit is filed.

22. <u>Usury</u>. Notwithstanding any provision herein, the total liability for payments in the nature of interest shall not exceed the applicable limits imposed by any applicable state or federal interest rate laws. If any payments in the nature of interest, additional interest and other charges made hereunder are held to be in excess of the applicable limits imposed by any applicable state or federal laws, it is agreed that any such amount held to be in excess shall be considered payment of principal and the principal balance shall be reduced by such amount in the inverse order of maturity so that the total liability for payments in the nature of interest, additional interest and other charges shall not exceed the applicable limits imposed by any applicable state or federal interest rate laws in compliance with the desires of Holder and Borrower.

23. <u>Notices</u>. All notices, requests, demands, instructions and other documents required or permitted by this Note shall be personally delivered or couriered, or sent by other means of written telecommunication, or mailed, certified or registered mail, return receipt requested, to the following addresses (or such other address to which a party has been notified in accordance with this provision):

|  |  |
|---|---|
| If to Holder: | Spring Creek Capital LLC<br>c/o Douglas B. Clegg<br>1342 E. Covey Run Court<br>Eagle, ID 83616 |
| If to Borrower: | Hawkes Motors<br>9393 W. Fairview Avenue<br>Boise, ID 83704 |

A personal or courier delivered notice shall be effective on delivery; a notice sent via telex, facsimile or other means of written telecommunications shall be effective one (1) business day after sending; a mailed notice shall be effective upon the date shown on the return receipt or other evidence of delivery; provided, however, that if the recipient refuses to accept delivery, such notice shall be effective three (3) business days after being mailed.

IN WITNESS WHEREOF, Borrower has caused this Note to be executed and delivered effective as of the date first written above.

*[Signature Page Follows]*

BORROWER:

C.A.R.S. ENTERPRISES, INC.

By: _____
Ryan Hawkes, President

By: _____
Curtis Grieve, Vice President

CONSENTED TO:

By: _____
Ryan Hawkes, Guarantor

By: _____
Suzann Hawkes, Guarantor

By: _____
Curtis Grieve, Guarantor

By: _____
Andrea Grieve, Guarantor

# GUARANTY

THIS GUARANTY, dated as of January 12, 2012 (this "Guaranty"), is executed by RYAN HAWKES and SUZANN HAWKES, husband and wife (collectively, "Guarantor"), for the benefit of SPRING CREEK CAPITAL LLC ("Beneficiary").

## RECITALS

WHEREAS, Beneficiary has loaned Three Hundred Thousand and No/100 U.S. Dollars ($300,000.00) to C.A.R.S. ENTERPRISES, INC., doing business as HAWKES MOTORS ("Borrower"), in exchange for a Promissory Note of even date herewith (the "Note");

WHEREAS, Paragraph 11 of the Note requires Guarantor to deliver to Beneficiary a guaranty of Borrower's obligations under the Note, together with a pledge executed by the principals of Borrower to grant Beneficiary a secured interest in the inventory and vehicles purchased by Borrower using the funds advanced Borrower by Beneficiary (the "Pledge Agreement");

WHEREAS, Guarantor is a current owner of and principal of Borrower, and is aware of the general income and financial status of Borrower and will be benefited either directly or indirectly by the lending of funds by Beneficiary to Borrower;

WHEREAS, in order to induce Beneficiary to loan money to Borrower in exchange for the Note, Guarantor has agreed to execute and deliver this Guaranty.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

**Section 1.  Continuing Guaranty; Waivers**

(a) Guaranty.

(i) Guarantor hereby irrevocably and unconditionally guarantees and promises to pay to, or for the benefit of, Beneficiary, upon demand, any and all of the payment and performance obligations owing by Borrower under the Note (the "Obligations").

(ii) In addition to the amounts described in Section 1(a)(i) above, Guarantor agrees to pay any and all costs and expenses (including reasonable fees, expenses and disbursements of counsel and court costs) that may be paid or incurred by Beneficiary in collecting the Obligations or in preserving or enforcing any rights under this Guaranty or as to the Obligations.

(b) Waivers. THE LIABILITY OF GUARANTOR UNDER THIS GUARANTY IS IRREVOCABLE, ABSOLUTE, INDEPENDENT AND UNCONDITIONAL, AND WILL NOT BE AFFECTED BY ANY CIRCUMSTANCE WHICH MIGHT



GUARANTY – P. 1

CONSTITUTE THE DISCHARGE OF A SURETY OR GUARANTOR OTHER THAN THE INDEFEASIBLE PAYMENT IN FULL OF THE OBLIGATIONS. IN FURTHERANCE OF THE FOREGOING AND WITHOUT LIMITING THE GENERALITY THEREOF, GUARANTOR AGREES AS FOLLOWS:

 (i) Guarantor's liability under this Guaranty will be the immediate, direct and primary obligation of Guarantor and will not be contingent upon Beneficiary's exercise or enforcement of any remedy it may have against Borrower or any other person or entity, or against any collateral now or hereafter securing the Obligations, including, without limitation, the collateral pledged under the Pledge Agreement.

 (ii) This Guaranty is a guarantee of payment and performance when due and not merely of collectibility.

 (iii) Beneficiary may enforce this Guaranty notwithstanding the existence of any dispute between Beneficiary and Borrower or any other person or entity with respect to the Obligations.

 (iv) Guarantor's payment of a portion, but not all of the Obligations will in no way limit, affect, modify or abridge Guarantor's liability for any portion of the Obligations remaining unsatisfied.

 (v) Guarantor's liability with respect to the Obligations will remain in full force and effect without regard to, and will not be impaired or affected by, nor will Guarantor be exonerated or discharged by, any of the following events:

  (1) any insolvency proceeding with respect to Borrower, Guarantor or any other person or entity;

  (2) any limitation, discharge or cessation of the liability of Borrower, Guarantor or any other person or entity for the Obligations due to any statute, regulation or rule of law, or any invalidity or unenforceability in whole or in part of the Obligations;

  (3) any sale, lease, transfer or other disposition of any or all of the assets of or equity interests in Borrower, Guarantor or any other person or entity;

  (4) any assignment or other transfer, in whole or in part, of Beneficiary's interest in or rights under this Guaranty, including without limitation any right to receive payment or performance of the Obligations, or of Beneficiary's interest in any collateral now or hereafter securing the Obligations;

  (5) any claim, defense, counterclaim or setoff, other than that of prior indefeasible payment or performance in full, that Borrower, Guarantor or any other person or entity may have or assert, including without limitation any defense of incapacity or lack of corporate or other authority;

(6) Beneficiary's amendment, modification, renewal, extension, cancellation, waiver or surrender of the Obligations, or Beneficiary's exchange, release or waiver of any collateral now or hereafter securing the Obligations;

(7) Beneficiary's exercise or nonexercise of any power, right or remedy with respect to any collateral now or hereafter securing the Obligations;

(8) Beneficiary's vote, claim, distribution, election, acceptance, action or inaction in any insolvency proceeding related to the Obligations;

(9) any impairment or invalidity of any collateral now or hereafter securing the Obligations or any failure to perfect any liens thereon or therein; and

(10) any other guaranty, by any person or entity, as to all or any part of the Obligations or any other indebtedness, obligations or liabilities of the Trust to Beneficiary.

(vi) Guarantor waives and agrees not to assert:

(1) any right to require Beneficiary to marshal assets in favor of Borrower, Guarantor or any other person or entity, to proceed against Borrower or any other person or entity, to proceed against or exhaust any collateral now or hereafter securing the Obligations, to give notice of the terms, time and place of any public or private sale of personal property security now or hereafter constituting collateral for the Obligations or to pursue any other right, remedy, power or privilege whatsoever;

(2) the defense of the statute of limitations in any action under this Guaranty or for payment of the Obligations;

(3) any defense arising by reason of any lack of corporate or other authority or any other defense of Borrower, Guarantor or any other person or entity;

(4) any defense based upon any of Beneficiary's errors or omissions in the administration of the Obligations;

(5) any right as to setoff or counterclaim;

(6) any defense based upon an election of remedies (including, if available, an election to proceed by nonjudicial foreclosure) which destroys or impairs the subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower or any other obligor as to the Obligations for reimbursement; and

(7) without limiting the generality of the foregoing, to the fullest extent permitted by law, any defense or benefit that may be derived from or afforded by applicable law limiting the liability of or exonerating guarantors or sureties, or which may conflict with the terms of this Guaranty.

GUARANTY – P. 3

(vii) Guarantor waives notice of the acceptance of this Guaranty or the exercise of any right, power or privilege under this Guaranty. The Obligations will conclusively be deemed to have been created, contracted, incurred and permitted to exist in reliance upon this Guaranty. Guarantor waives promptness, diligence, presentment, protest, demand for payment, notice of default, dishonor or nonpayment and all other notices to Borrower, Guarantor or any other person or entity with respect to the Obligations.

(viii) The obligations of Guarantor under this Guaranty are independent of and separate from the obligations of Borrower or any other person or entity and a separate action or actions may be brought against Guarantor, whether or not Borrower or any other person or entity is joined therein or a separate action or actions are brought against Borrower or any other person or entity.

(ix) Guarantor will not have any right to require Beneficiary to obtain or disclose any information with respect to: (A) the financial condition of Borrower or any other person or entity or the ability of Borrower or any other person or entity to pay the Obligations; (B) the Obligations; (C) any collateral now or hereafter securing the Obligations; (D) the existence or nonexistence of any other guarantees of all or any part of the Obligations; (E) any action or inaction on the part of Beneficiary or any other person or entity; or (F) any other matter, fact or occurrence whatsoever.

(x) To the extent that Guarantor makes a payment to Beneficiary, or Beneficiary exercises any right of setoff, and such payment or the proceeds of such setoff or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by Beneficiary in its discretion) to be repaid to a trustee, receiver or any other party, in connection with any insolvency proceeding or otherwise, then to the extent of such recovery the obligation or part thereof originally intended to be satisfied will be revived and continued in full force and effect as if such payment had not been made or such setoff had not occurred.

**Section 2.**  **Miscellaneous.**

(a) Costs. Guarantor will pay all costs incurred by Beneficiary in connection herewith including, but not limited to, reasonable attorneys' fees and expenses and court costs, and all other costs and expenses associated with court and/or administrative proceedings, incurred by reason of any action, suit, proceeding, hearing, motion or application before any court or administrative body in which Beneficiary may be or become party by reason of this Guaranty, including, but not limited to, bankruptcy and administrative proceedings, as well as any other of the foregoing where a proof of claim is by law required to be filed, or in which it becomes necessary to defend or uphold the terms of this Guaranty (the "Costs"), in the event that (i) there occurs any default under this Guaranty; or (ii) Beneficiary is made party to any litigation merely because of the existence of this Guaranty. The Costs will be paid in addition to the amounts guaranteed in accordance with the provisions of this Guaranty.

(b) Amendments. Any amendment or waiver of any term of this Guaranty must be made in writing and signed by Guarantor and Beneficiary.

GUARANTY – P. 4

(c) <u>Notices</u>. All notices required or permitted under this Guaranty will be in writing and will be deemed effectively given: (i) upon personal delivery to the party to be notified; (ii) on the date sent by facsimile if sent during normal business hours of the recipient with receipt confirmed; (iii) five days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iv) one day after deposit with an overnight delivery service, specifying next day delivery. All communications will be sent to the address as set forth below (or at such other address as such party may designate by ten (10) days' advance written notice to the other party):

|  |  |
|---|---|
| If to Beneficiary: | Spring Creek Capital LLC<br>c/o Doug Clegg<br>1342 E. Covey Run Court<br>Eagle, ID 83616 |
| If to Guarantor: | Ryan Hawkes<br>9393 W. Fairview Avenue<br>Boise, ID 83704 |
| If to Borrower: | C.A.R.S. Enterprises, Inc.<br>c/o Hawkes Motors<br>9393 W. Fairview Avenue<br>Boise, ID 83704 |

(d) <u>Severability</u>. If one or more provisions of this Guaranty are held to be unenforceable under applicable law, such provision will be excluded from this Guaranty and the balance of the Guaranty will be interpreted as if such provision were so excluded and will be enforceable in accordance with its terms.

(e) <u>Successors and Assigns</u>. This Guaranty is binding upon, inures to the benefit of and is enforceable by Guarantor, Beneficiary and their respective successors and assigns.

(f) <u>Choice of Law</u>. The terms of this Guaranty will be construed in accordance with the laws of the State of Idaho.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first written above.

GUARANTOR: _____
Ryan Hawkes

_____
Suzann Hawkes